| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| VIRGINIA FISHER, | § | |
| | § | |
| Plaintiff, | § | |
| versus | § | CIVIL ACTION H-04-3403 |
| | § | |
| GREATER HOUSTON CONVENTION | § | |
| AND VISITORS BUREAU AND | § | |
| GERARD "JORDY" TOLLETT, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1. *Introduction.*

A woman was fired. She says that it was because of her age, sex, and opposition to her employer's sick-leave policy. The employer says that it fired her after budget cuts required a reduction in force. The employer has moved for summary judgment and will prevail.

2. *Background.*

The Greater Houston Convention and Visitors Bureau is a non-profit corporation that promotes Houston's restaurants, hotels, convention centers, and entertainment venues. It works to attract visitors for sporting events, business conferences, and vacations. The Bureau is funded by Houston's hotel and occupancy tax.

In April 1999, Gerard Tollett, president of the Bureau, hired Virginia Fisher as Director of Tourism. She was 59 years old. Fisher supervised the five other workers in the tourism department.

In September 2002, Fisher questioned the Bureau's sick-leave policy. The Bureau required that supervisors report workers' absences in four-hours increments. That is, if a worker left for one hour for a doctor's appointment, his supervisor had to

record a four-hour absence.  Fisher believed that workers should be charged only for the actual time spent away from work.  Alternatively, she argued that it was illegal to dock salaried – as opposed to hourly – workers for less than a full day.  At a meeting in December 2002, Fisher told several superiors that the policy was "discriminating."  They told her to comply with it.  She did not.  Instead, she reported actual time absent for her workers.

In February 2003, the Bureau wanted to hire a tourism sales manager for Mexico.  Fisher interviewed two candidates.  She believed that one candidate – Doug Freedman – was unqualified for the job, and she surmised that he was interviewed only because he was a friend of Tollet.  She recommended that he not be hired for the position because he did not speak Spanish.  He was not; he was later hired as a manager in the sales department.  In March 2003, Julie Charros – a Spanish speaker – was transferred from the convention sales department to fill the position.

In February 2003, the hotel and occupancy tax revenues dipped, reducing the Bureau's budget by $220,000.  The Bureau trimmed its non-personnel budget.  The next month, it learned that the tax revenue loss was greater than expected.  In response, the Bureau reduced overhead by terminating several workers.  It went from 76 full-time positions and nine part-time positions to 69 full-time and 10 part-time.  Four of the seven workers in the tourism department were eliminated.  Fisher was one of them.  She was fired on March 25, 2003.

The Bureau told Fisher that the Director of Tourism position was being eliminated in a effort to cut payroll expense because of the budget shortfall.  She also was told that she could apply for other positions at the Bureau.  She did not.

Eight months later, on December 26, 2003, Fisher filed discrimination complaints with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights.

3. *Sex.*

Fisher says that the Bureau fired her because she is a woman.  To establish this claim, she must prove that she was replaced by a man or that a man remained in a similar position.  She cannot.

Fisher argues that the Bureau gave her job to a man, George Franz.  At her deposition, she clarified – and thwarted – this claim.  First, she conceded that her job

as Director of Tourism was actually eliminated. Second, while George Franz assumed some of her duties, he worked for a separate non-taxable entity – the Houston Image Group. (Fisher Depo., pp. 13-14). Franz did not replace Fisher.

After Fisher was fired, the Bureau hired Ken Middleton as Director of Convention Sales. Fisher says that she was not considered for the job even though she was more qualified. This, she says, is sex discrimination. Fisher admits that (a) she has never seen Middleton's resume, (b) she has not talked to Middleton about his experience, and (c) her resume and Bureau application do not demonstrate convention sales experience. The Bureau had no duty to consider Fisher or her presumption of superior competence.

Fisher also complains that the Bureau fired only women. While this is true, it is not significant. First, Fisher must show that she herself was fired for being a woman. If the Bureau discriminated against other women, Fisher has no claim. Second, following the reduction in force, the Bureau had 74 workers. Of those, 58 – or 78 percent – where women. Fisher concedes that two-thirds of the workers who remained in her department were female. (Fisher Depo., p. 145).

A management team comprised of two men and two women decided to fire Fisher. Tollet hired Fisher and he sat on the management team that fired her. These facts alone raise a presumption against discrimination. Even Fisher admits that she never witnessed sex discrimination while she worked at the Bureau. (Fisher Depo., pp. 32-47). This claim fails.

4.   *Age.*

Fisher admits that the termination itself is her only proof of age discrimination at the Bureau. (Fisher Depo., pp.10-13). The objective evidence proves otherwise.

Fisher was in the protected class – at age 59 – when she was hired. It is unlikely that the Bureau developed an aversion to her age just four years later.

Five workers were fired along with Fisher. Two of them were under the age of 40. Two others were only 41. Of the three workers retained in the tourism department, two were over 40. In the convention sales department, 11 workers over the 40 remained after the firings. There is absolutely no evidence to suggest that Fisher's age was a factor in the firing.

5.  *Ethnic Retaliation.*

Fisher says that the Bureau fired her for refusing to hire Doug Freedman for Tourism Sales Manager for Mexico. To prevail on a retaliation claim, Fisher must prove that she engaged in a protected activity and that the Bureau fired her for it. 42 U.S.C. § 2000e-2(a)(1)-3(a).

Fisher's supervisor encouraged her to hire Freedman for the Mexico position. Fisher refused because he did not speak Spanish. In her complaint, Fisher says that the Bureau, "hired the unqualified person anyway, discriminating against more qualified minority candidates." In reality, consistent with her recommendation, Freedman was not hired for that job, but another one. She has no grievance.

Even if the Bureau had hired Freedman for the Mexico position, the law protects workers who complain about hiring decisions based on race, color, religion, sex, or national origin. Fisher complained about Freedman's qualifications. This is not a protected activity or Fisher's business. If she is unhappy with the hiring decisions of her employer, her recourse is to quit, not to sue.

6.  *Retaliation Under Fair Labor Standards Act.*

Fisher says that the Bureau fired her after she complained about the sick-leave policy in September and December 2002. (Fisher Depo., pp. 56-57). It did. Still, the claim fails.

To recover under a retaliation claim, Fisher first must prove that she engaged in a protected activity. Here, the law requires that she file a complaint. 29 U.S.C.A. § 215(a)(3)(1992). Fisher never presented a formal written grievance to the Bureau or the Department of Labor. She orally complained, and then she refused to comply. In response, her supervisors told her to record the leave in four-hour increments. When she again refused, it did nothing. Mere grumbles are not heeded by employers or the law.

Even considering her oral complaints as protected activities, Fisher admits that she has no evidence that her objections caused her termination. (Fisher Depo., 61-62). The Bureau fired Fisher seven months after her first complaint and four months after the second. In between her complaints, she did not comply in her reporting, and no one ever said anything about it. There is no proximate connection. This claim fails.

7. *Intentional Infliction of Emotional Distress*

To prevail on a claim for intentional infliction of emotion distress, Fisher must prove that the Bureau's outrageous behavior caused her real and severe distress. *See Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31,33 (5th Cir. 1992). After reading the complaint and conducting two pre-trial conferences, the court was unconvinced that this claim had merit. It suggested that Fisher seriously consider pursuing the claim and ordered her to file a bill of particulars on the legal theory. Fisher persisted.

In the bill, she argued that the Bureau acted outrageously when it pulled her from a client meeting and fired her unexpectedly. In her deposition, she claimed that it damaged her reputation when it told the client that she left for a family emergency, rather than that she was terminated. While Fisher distinctly remembers this humiliation and embarrassment, she cannot remember the client's name. Fisher's only injury is that she has had "a hard time sleeping." (Fisher Depo., p. 147) The embarrassment attached to being fired is not the stuff of a tort. Calling an employee out of a meeting is what employers do. Fisher worked for the Bureau, not the other way around.

After arguing the merit of this meretricious claim for six months, because Fisher did not address this legal theory in her response, she has abandoned it – at last.

8. *Legitimate Reason for Firing.*

Fisher testified that the first time that the Bureau ever discriminated against her was in March 2003. The record is clear that there was no discrimination, just a firing in response to a budget shortfall.

Fisher argues that there was pretext for the firing because the Bureau hired eight workers from August 1, 2002, to October 21, 2003. She says that, "the suspicious timing of these hires and a 'reduction in force' that was not based on performance, expenditures or seniority criteria are significant evidence of pretext sufficient enough to survive summary judgment."(Resp., p. 18).

Because the Bureau did not realize the extent of the shortfall until mid-March of 2003, the five hires before that time are irrelevant. After notice of the budget cuts, the Bureau trimmed the Tourism department and transferred it to the Houston Image Group.

Then, in April 2003, the Bureau expanded Convention Sales, hiring Ken Middleton as director and adding two sales positions.  The Bureau says it believed that this expansion would increased revenues – conventions are more profitable than tourists.  Because the change was not arbitrary, Fisher and this court may not scrutinize the Bureau's business decisions.  She has no legal interest in seniority as tenure on the job.  Performance may have been a part of the selection of Fisher among the workers.  The Bureau could have fired Fisher for no reason; it just could not fire her based on her race, color, religion, sex, or national origin.  There is no evidence that it did.

9. *Discovery.*

Fisher argues that she has not had the opportunity to discover why she was fired.  She says that she needs to depose five workers to inquire into the Bureau's decision-making process.  She also says that while the Bureau relies on the sworn testimony of Gerald Tollet, the court denied her right to cross-examine him.

The court ordered the Bureau to furnish Fisher with objective data, including a chronology of events, payroll records, an organizational chart, information about the sick-leave accounting, demographic information about the fired employees, the Bureau's financial statements, employee manuals, and the minutes from the directors' meeting about the budget cuts.  Then, the Bureau moved for summary judgment, demonstrating that there is no genuine issue as to any material fact in Fisher's case.  The depositions only would serve to delay the inevitable.

Fisher was required to establish a prima facie case *before* filing her lawsuit.  She may not waste the time and resources of the court and opposing counsel and *then* research her case.  She has not raised an inference of discrimination or retaliation that warrants further investigation.  She has no right to cross-examine Tollett.  The Bureau has told her why it fired her.

10. *Attorney's fees.*

The Bureau filed a counterclaim against Fisher to recover its attorneys' fees.  Fisher admittedly lied in her complaint when she said that (1) the company made her implement the sick policy, (2) she was forced to hire Freedman for the Mexico position, and (3) Middleton was unqualified for Director of Convention Sales.  At her

deposition, Fisher conceded that she had no basis for her discrimination claims other than the firing. In pre-trial conferences, the court gave her several opportunities to amend her complaint to strike frivolous claims. She refused. Instead, she argued with the court and then abandoned the intentional infliction of emotional distress claim at summary judgment.

For these reasons, attorneys' fees will be awarded post-judgment.

10. *Conclusion*

Fisher has shown no facts that suggest that the Bureau fired her because of her sex, age, or opposition to its policies. The Bureau, on the other hand, has substantiated why it fired Fisher: a reduction in force was necessary within the Bureau following the decline in hotel-occupancy tax revenues. The Bureau prevails, and Fisher will take nothing.

Signed August 24, 2005, at Houston, Texas.

Lynn N. Hughes
United States District Judge